**Juan P. CEDILLO, Plaintiff,**

v.

**PEPSI–COLA GENERAL BOTTLERS, INC.; et al., Defendants.**

Civ. A. No. 83–4218–S.

United States District Court, D. Kansas.

Dec. 6, 1984.

Fred W. Phelps, Jr., Phelps-Chartered, Topeka, Kan., Richard W. Niederhauser, Kansas City, Kan., for plaintiff.

Richmond M. Enochs, Overland Park, Kan., Mark P. Johnson, Robert B. Terry, Kansas City, Mo., for Pepsi-Cola.

Thomas M. Welsch, Spencer, Fane, Britt & Browne, Overland Park, Kan., for Elmer Knapp.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendants' motion for partial summary judgment and to strike claims for physical and psychological injuries. The uncontroverted facts are as follows. Plaintiff is a Mexican-American who was employed by defendant Pepsi-Cola General Bottlers, Inc. as a route driver. Defendant Elmer Knapp was hired by defendant Pepsi in 1981 as a

Sales Manager. The route drivers at Pepsi were represented by Teamsters Local 838. In July, 1981, plaintiff became union steward and represented the route drivers in dealings with management when the drivers had complaints or grievances.

At the start of each workday, all route drivers met at the Pepsi warehouse for a sales meeting in which customer invoices were distributed, announcements were communicated, and drivers were told in what order to make their stops. Usually after these meetings, plaintiff and other drivers would stop to have breakfast together. On or about March 17, 1982, plaintiff and other drivers were having breakfast at the J.B. Big Boy's Restaurant in Kansas City, Kansas, when defendant Knapp arrived with three other Pepsi supervisors. Defendant Knapp told the drivers they were being terminated for being off their routes. Plaintiff advised defendant Knapp that Gary Hursman, the group's route supervisor, knew they were having breakfast. The facts here are somewhat controverted except that plaintiff and the other drivers remained in defendant's employ.

That afternoon a meeting was held between plaintiff Norm Miller, Pepsi's General Manager, defendant Knapp and Roy Stepaniak, the Local 838 business agent. Plaintiff told Mr. Miller that he believed the company was treating him unfairly in that Pepsi supervisors were checking up on him on the route. It is uncontroverted that Pepsi supervisors also treated a white route driver similarly in this respect. Plaintiff asked Mr. Miller whether his practice of having breakfast violated the collective bargaining agreement. Mr. Miller responded that he did not know, but that a policy concerning breakfasts would be forth coming.

On the following Monday, at the morning sales meeting, Mr. Knapp announced a rule that drivers would not be allowed to congregate on the route with other drivers for any reason, and an employee found to be in violation of the rule would be terminated. Between the announcement of this

rule in March, 1982, and May 7, 1982, plaintiff had breakfast with other drivers on three (3) occasions. On May 7, 1982, plaintiff and another driver were observed having breakfast by defendant Knapp and three other Pepsi supervisors. Both drivers were terminated.

Plaintiff asserts that at the earlier meeting with Mr. Miller and defendant Knapp he was told by Mr. Miller that he could continue having breakfast. He asserts he was further notified by Mr. Miller that another policy would be written up to satisfy the union if any change were to occur. Plaintiff argues that the absence of a written policy with union approval indicates the earlier statement by Mr. Miller concerning breakfast was to still apply. Plaintiff further asserts that when he asked defendant Knapp if the new rule had been cleared with Mr. Miller, defendant Knapp responded, "Juan, I'd better not see you eating breakfast at all or I'll make sure that you get terminated."

Defendants seek partial summary judgment on plaintiff's discriminatory termination claim pursuant to 42 U.S.C. 1981 Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.*, as amended, and § 1981 are "parallel or overlapping remedies against discrimination." *Alexander v. Gardner-Denver, Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). Title VII principles should be applied in employment discrimination cases arising under 42 U.S.C. § 1981 *Hinton v. Lee Way Motor Freight, Inc.*, 412 F.Supp. 625 (W.D. Okla.1975).

To establish a *prima facie* disparate treatment claim plaintiff must show:

... (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications....

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36

L.Ed.2d 668 (1973). If plaintiff establishes a *prima facie* case, the employer then must articulate some legitimate, non-discriminatory reason for it's decision. *Board of Trustees of Keene State College v. Sweeney* 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978). After the employer has articulated a non-discriminatory reason, the employee must then prove the stated justification was merely a pretext for discrimination. *McDonnell Douglas Corp. v. Green, supra.*

██ Assuming the *prima facie* case to be established, defendants have articulated a non-discriminatory reason for the discharge. Plaintiff was found to be in violation of the rule established at the earlier morning meeting. Violation of this rule resulted in violation of Group IV, Rule 10 of the Pepsi-Cola General Bottlers, Inc. General Rules of Conduct which prohibits insubordination. The stated discipline for violation of this rule was discharge. "With respect to discharge for violation of work rules, the plaintiff must first demonstrate by a preponderance of the evidence either that he did not violate the rule or that, if he did, white employees who engaged in similar acts were not punished similarly." *Green v. Armstrong Rubber Co.*, 612 F.2d 967 968 (5th Cir.1980). Plaintiff has, in effect, admitted to being in violation of the rule. That the plaintiff did not believe the rule to be valid is immaterial. Further, plaintiff has shown no evidence of similarly situated white employees who were not terminated. Dealing firmly with insubordination to prevent it from spreading to other employees is a legitimate business purpose. See *Ray v. Safeway Stores, Inc.*, 614 F.2d 729 (10th Cir.1980). Plaintiff has failed to establish a factual basis for his discriminatory termination claims.

In order to rule favorably on a motion for summary judgment, the court must first determine that the matters considered in connection with the motion disclose "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56, Federal Rules of Civil Procedure. The principal inquiry is therefore whether a genuine issue of material fact exists. *Dalke v. The Upjohn Co.* 555 F.2d 245 (9th Cir.1977); *Hanke v. Global Van Lines, Inc.*, 533 F.2d 396 (8th Cir.1976). A motion under Rule 56 will be denied unless the movant demonstrates beyond doubt that he is entitled to a favorable ruling. *Madison v. Deseret Livestock Co.*, 574 F.2d 1027 (10th Cir.1978); *Mustang Fuel Corp. v. Youngstown Sheet Tube Co.*, 516 F.2d 33 (10th Cir.1975). Pleadings and documentary evidence are to be construed liberally in favor of a party opposing a Rule 56 motion. *Harman v. Diversified Medical Investment Corp.*, 488 F.2d 111 (10th Cir.1973), *cert. denied* 425 U.S. 951, 96 S.Ct. 1727, 48 L.Ed.2d 195 (1976). However, once a summary judgment motion has been properly supported, the opposing party may not rest on the allegations of the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Coleman Darden*, 595 F.2d 533, 536 (10th Cir.), *cert. denied* 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 184 (1979). A party with evidence tending to create a factual issue must present that evidence to the trial judge or summary judgment is proper. *Otteson v. United States*, 622 F.2d 516, 520 (10th Cir.1980). Applying these standards to the case at bar, defendants are entitled to partial summary judgment on plaintiff's discriminatory termination claim.

██ Defendants next seek to have plaintiff's claim for physical and psychological injuries stricken on the basis that plaintiff will not be able to obtain medical testimony sufficient to provide a causal link between defendants' conduct and plaintiff's injuries. Defendants have failed to establish a sufficient basis for which to strike these claims, therefore the motion to strike must be denied.

IT IS BY THE COURT THEREFORE ORDERED that defendants motion for partial summary judgment on the issue of discriminatory termination is hereby granted. IT IS FURTHER ORDERED that defendants' motion to strike claims for physi-

cal and psychological injuries is hereby denied.