11 Chief Judge JOAN BERNARD ARMSTRONG.
This is an appeal from a summary judgment granted by the trial court dismissing the petition of Fabiola Clark-Taylor as against defendants Louisiana Insurance Guaranty Association (LIGA), Preservation Resource Alliance of New Orleans, *23 Inc., named in the petition as Preservation Resource Center Foundation d/b/a Preservation Resource Center of New Orleans and Operation Comeback, a Department of Preservation Resource Center named in the petition as Operation Comeback, Inc. (PRC). The trial court certified the judgment as a final judgment and found that there is no just reason for delaying the designation.
The plaintiff assigns as error the trial court’s action “sustaining on summary judgment defendant’s [sic] exception of no Right of Action.” We find nothing in the judgment addressing such an exception. In her statement of issues of law presented, plaintiff contends that the defendant failed to warn plaintiff of the danger represented by a hole in the sidewalk; that the trial court did not address the issue of the defendant’s alleged negligence; and that the PRC’s affidavit does not | ..address the affiant’s knowledge of the danger presented by the hole or the steps taken or not taken by her in response to that danger.
The plaintiffs petition alleges that on March 18, 2000, PRC organized and conducted a workshop and walking tour in the Esplanade Ridge/Treme area that included the 1200 block of North Robertson Street in New Orleans. One of the meter boxes owned and possessed by the Sewerage and Water Board of New Orleans (SWB), a named defendant, under the control of the City of New Orleans, also a named defendant, did not have a cover. PRC planned the route of the walking tour and followed that route in conducting the tour. The plaintiff alleges that all defendants had constructive or actual notice of the absence of the meter box cover and took no reasonable steps to ameliorate the danger it presented. The plaintiff sought damages under the theories of strict liability and negligence for injuries allegedly sustained by the plaintiff when she stepped into the uncovered SWB meter box and fell to the sidewalk.
In support of its motion for summary judgment, PRC and LIGA submitted the plaintiffs deposition together with the affidavit of Mary Margaret Lousteau, the Assistant Director for Operation Comeback.
According to Ms. Lousteau’s affidavit, she was present at the presentations made in connection with the walking tour, and at no time was any warranty made that the sidewalks were free of defects, nor was any assurance given to anyone that all the meter covers on the route were in place. The tour on which the plaintiff claims to have been injured followed the route outlined in a related pamphlet, and |3was to follow the public streets and sidewalks. No permit was required for the tour, and PRC neither had nor utilized exclusive use of these streets and sidewalks. At no time before, during or after the tour did PRC have or exercise custody, control or ownership of any of the meter boxes located on the public streets or public sidewalks or of any of those public streets and sidewalks themselves. Furthermore, at no time before, during or after the tour did PRC represent that it would assume responsibility for the condition of the meters, sidewalks or streets. Ms. Lousteau further testified that before the plaintiffs accident and during the tour it became necessary at certain spots on the tour to walk on the street because the sidewalk was in such poor condition.
In her deposition, the plaintiff admitted that there was nothing obstructing her view of the sidewalk and that she was familiar with the area where the accident occurred. Furthermore, she testified that she was a member of the board of directors and was active in the local neighborhood association. Although she testified that it was raining at the time of the *24 tour, she could not be sure whether or not her umbrella was open when she allegedly fell. She testified that her tour group consisted of only ten to twelve people.
The plaintiff submitted photographs of the area where she claims to have fallen, and they show an open meter box that is visible from some distance away. The open area does not blend into the surrounding sidewalk. The sidewalk is a very light, pale, whitish grey, and the hole is dark blue/black bordered by a dark rusty-red area. Clearly, a person approaching this open meter box should have |4seen it in the exercise of slight care. The photographs submitted by the plaintiff also demonstrate that in that area the sidewalk was clearly wide enough to accommodate persons who sought to avoid the open meter box.
The plaintiff also submitted the affidavit of Marie Marcal, president of the Esplanade Ridge and Treme Civil Association, in opposition to the motion for summary judgment. According to Ms. Marcal, had she known that the route of the tour would take the group down Columbus Street and back up North Robertson, she would have encouraged the sponsors to select a route that would not have involved “taking such a small group of pedestrians into such dangerous sections of the neighborhood.” This would seem to contradict the plaintiffs assertion that the group was too large for safety. Ms. Marcal also testified by affidavit that from the beginning of the tour until the plaintiffs alleged accident, the tour was narrated by Ms. Lousteau, who was at the head of the group, and by Stephanie Bruno, who was walking in the street adjacent to the sidewalk. While the group was bunched together in a drizzling rain listening to the tour narration, the plaintiff fell into the open meter box. Ms. Marcal admitted that the group walked in the street during certain sections of the tour because the sidewalks were not wide enough to accommodate the group in a close enough proximity to hear Ms. Lous-teau’s narration. Ms. Marcal alleges in her affidavit that Ms. Lousteau moments before the fall had passed directly over or around the uncovered water meter and did not warn the group of the open box. Similarly, Ms. Marcal says that Ms. Bruno, who was in the street adjacent to the open meter box, failed to warn the group of the [.■¡hazard. Significantly, Ms. Marcal averred that immediately prior to the plaintiffs alleged fall, the PRC’s tour director directed the group’s attention to the blighted house across the street from the impaired sidewalk on which the group was standing. Ms. Marcal attached twenty-one Xerox copies of black and white photographs taken some days later. However, the photographic reproductions are of such poor quality that we cannot distinguish relevant characteristics of the scene from them.
Appellate courts review summary judgment de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Independent Fire Insurance Company v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/2000), 755 So.2d 226, 230. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions such as this. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A. (2). A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. The burden of proof remains with the movant. However, if the movant will not bear the *25 burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. | ^Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966 C(2). The jurisprudential presumption against granting the summary judgment was legislatively overruled by La.C.C.P. art. 966 as amended. The amendment levels the playing field between the parties, with the supporting documentation submitted by the parties to be scrutinized equally and the removal of the overriding presumption in favor of trial. Under the amended statute, the initial burden of proof remains with the mover to show that no genuine issue of material fact exists. However, under La.C.C.P. art. 966(C), once mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. Once mover has properly supported the motion for summary judgment, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. The amendment to La.C.C.P. art. 966 bring Louisiana’s standard for summary judgment closely in line with the federal standard under Fed.Rule Civ.Proc. 56(c). Hayes v. Autin, 96-287 (La.App.3 Cir. 12/26/96); 685 So.2d 691, 694, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41. A fact is material if it is essential to a plaintiffs cause of action under the applicable theory of recovery and without which plaintiff could not prevail. Generally, material facts are those that potentially insure or preclude recovery, affect the litigant’s ultimate success, or determine the outcome of a legal dispute. Prado v. Sloman Neptun Schiffahrts, A.G., 611 So.2d 691, 699 (La.App. 4th Cir.1992), writ not considered 613 So.2d 986 (La.1993).
17Although summary judgments are now encouraged, they are inappropriate where there is a genuine issue of material fact to be resolved by the trier of fact. In Hebert v. St. Paul Fire and Marine Ins. Cos., 99-0333 (La.App. 4 Cir. 2/23/2000), 757 So.2d 814, we recognized the limits to imposition of strict liability to organizers of events that use the public streets. The PRC’s use of the public streets for the purposes of the tour did not transfer the care and custody of the route of the tour to the PRC. We find nothing in the record to support a finding that the PRC became the custodian of the route of the tour or was responsible for the condition of the route. There was no lease agreement between the City and the PRC, nor was there a legal obligation to maintain the route or to provide insurance coverage. As in Hebert, we fail to find the PRC’s actions constituted the exercise of custody and control over the entire tour route sufficient to impose liability, and we conclude, as did the trial court, that the PRC is entitled to judgment as a matter of law.
The evidence before the trial court on the motion for summary judgment demonstrates that the hazard was obvious to the plaintiff, and fails to provide any basis for extending premises liability for the hazard to the PRC.
For the foregoing reasons, we affirm the judgment of the trial court granting summary judgment dismissing the Preservation Alliance of New Orleans, Inc. and its *26 successor insurer, Louisiana Insurance Guaranty Association.
AFFIRMED.